**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **JEFFREY WARREN SPINNEY** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 06-309 Erie** |
| | ) | **District Judge McLaughlin** |
| **UNITED STATES OF AMERICA, et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants.** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

## I.      RECOMMENDATION

It is respectfully recommended that the motion to dismiss or alternatively for summary judgment filed by Defendants [Document # 17] be granted in part and denied in part.  More specifically, the motion should be:

a)      denied as to Defendants' contention that Plaintiff has failed to exhaust his administrative remedies under the PLRA on his excessive force claim;

b)      denied as to Defendants' argument that Plaintiff has not sufficiently alleged the personal involvement of Defendants Sherman, Robare and Reich;

c)      granted as to the Eighth Amendment deliberate indifference claim involving the plantar fasciitis condition;

d)      granted as to the Eighth Amendment deliberate indifference claim involving the wrist and hand injuries sustained during the February 2005 prison security incident;

e)      granted as to the FTCA claims involving medical negligence as to both the plantar fasciitis condition and the wrist and hand injuries; and

f)      granted as to the negligence claim involving the application of flex-cuffs.

Defendants may file an answer or dispositive motion to the remaining claims before April 3, 2008.

1

## II.    REPORT

##         A.    Relevant Procedural History

On December 28, 2006, Plaintiff, a federal inmate incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* action, raising civil rights claims pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), as well as negligence claims under the Federal Tort Claims Act.  Named as Defendants are: United States of America; Warden James Sherman; Security Captain Donald Reich; Associate Warden S.L. Robare; Health Services Administrator Rodney Smith; Supervisory Physician's Assistant Charles Montgomery; and Clinical Director Dennis Olson, all current or former employees of the FCI-McKean.

Plaintiff lists thirteen separate causes of action in his complaint.  Howevemployer, his claims can best be summarized into the following categories.   First, Plaintiff raises Eighth Amendment claims under *Bivens* alleging that Defendants were deliberately indifferent to his serious medical needs in relation to medical  treatment he received a) for his plantar fasciitis condition, b) for injuries to his wrist and hand, and c) for intentionally prescribing medication to exacerbate his Hepatis C.  Second, Plaintiff raises an Eighth Amendment claim alleging that Defendants used excessive force against him during a February 2005 prison security incident.  Finally, Plaintiff raises a negligence claim under the FTCA claiming that the United States should be liable for failing to properly treat both of his medical conditions (the plantar fasciitis and the wrist injuries) and for failing to prevent the excessive use of force during the prison security incident.[1]      Defendants have moved to dismiss or alternatively for summary judgment [Document # 17] and Plaintiff has filed a brief in opposition [Document # 24].  Defendants have not filed a reply to the opposition brief.  The issues are ripe for disposition by this Court.

---

[1]  On the face of his complaint, Plaintiff also alleges that his Fifth Amendment due process rights were violated by the inadequate medical care.  However, such a claim only implicates the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97 (1976).

**B.     Standards of Review**

**1.     *Pro Se* Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**2.     Motion to dismiss**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, ___ U.S. ___, ___ 127 S.Ct. 2197, 2200 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether

he should be entitled to offer evidence to support his claim.  <u>Neitzke</u>; <u>Scheuer v. Rhodes</u>, 419 U.S. 232 (1974).   As the United States Supreme Court recently held in <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)).   The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. <u>Twombly</u>, ___ U.S. ___, 127 S. Ct. at 1965 <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S.  265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, ___ U.S. ___, 127 S.Ct. at 1965.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at ___, 1974.

In other words, at the motion to dismiss stage, a plaintiff is "required to makes a 'showing' rather than a blanket assertion of an entitlement to relief." <u>Smith v. Sullivan</u>, 2008 WL 482469 (February 22, 2008) <u>quoting</u> <u>Phillips v. County of Allegheny</u>, ___ F.3d ___, 2008 WL 305025, at *5 (3d Cir. Feb. 5, 2008).  "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips</u>, 2008 WL 305025, at *6 (<u>quoting</u> <u>Twombly</u>, ___ U.S. at ___, 127 S.Ct. at 1965 n.3).

### 3.    Motion for summary judgment

Both Plaintiff and Defendants have submitted numerous exhibits in support of their pending arguments. Therefore, this Court will construe the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) March 10, 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v.

Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.


C.    The *Bivens* Claims under the Eighth Amendment

Plaintiff makes four separate *Bivens* claims under the Eighth Amendment; first, Plaintiff

claims that Defendants were deliberately indifferent to his serious medical needs in relation to medical treatment he received a) for his plantar fasciitis condition, b) for injuries to his wrist and hand, and c) for intentionally prescribing medication to exacerbate his Hepatitis C[2], and next, Plaintiff raises an Eighth Amendment claim alleging that Defendants used excessive force against him during a February 2005 prison security incident.

### 1. The Prison Litigation Reform Act

#### a) The Exhaustion Requirement

Defendants argue that Plaintiff has not exhausted his administrative remedies with respect to the excessive force claim stemming from the prison security incident on February 22, 2005.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id. (italics added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136

---

[2] Plaintiff claims that Defendant Olson intentionally prescribed medication in order "to maliciously cause harm to Plaintiff's liver." Document # 3, ¶ 28. Defendants have not addressed this claim in their dispositive motion.

(Unpublished Opinion) (10th Cir. May 8, 1997).[3]  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, ___ U.S. ___, ___ 126 S.Ct. 2378, 2384-88 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."  Id. at 2382.  See also Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

A plaintiff need not affirmatively plead exhaustion.  Jones v. Bock, ___ U.S. ___, ___, 127 S.Ct. 910, 921 (Jan. 22, 2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.");  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the

---

    [3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002)).  Instead, it is the burden of a defendant asserting the defense to plead and prove it. <u>Id.</u>

### b)       The Administrative Process Available to Federal Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to federal inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones v. Bock</u>, ___ U.S. at ___, 127 S.Ct. at 922-23.

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an  issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a).   Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request [to the Warden], on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a).   The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response.  28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. <u>Id</u>. The Regional Director has thirty (30) days

and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### c) Analysis

Defendants argue that Plaintiff did not fully and timely exhaust his *Bivens* claim regarding the excessive use of force claim which occurred on February 22, 2005. Plaintiff argues to the contrary.

Defendants contend that Plaintiff's remedy request was received on June 15, 2005, and (to the extent that it complained about the excessive use of force on February 22, 2005[4] ) was rejected as untimely as the administrative remedy process mandates that a BP-9 be filed within

_____

[4] The text of the Administrative Remedy touches on both the use of excessive force during the incident and the inadequate medical care for the resulting injuries. The full text reads:

> On February 22, 2005, at 3:45 pm, I reported to the dining hall for UNICOR work call. At approximately 4:30 pm, the move team from both USP Lewisburg and MCKean RTC, stormed into the dining hall. They ordered everyone to "get on the floor!"

> Through the officer's quest for intimidation, their overzealous and inexperience cause me physical pain. In particular, I suffered either ligament or tendon damage in both my left wrist and middle finger of my right hand. To date, I can neither apply pressure on my left wrist nor can I close my right hand.

> I previously visited the medical department, and they informed me that, "the x-ray shows no broken bones or arthritis, so there isn't anything (they) can do." See BP-8 Response.

> It is respectfully submitted that the only manner in which this problem can be rectified, and my injuries properly attended, is if I am treated by a professional who specializes in this type of injury.

> This is not an extraordinary request considering that my injuries are a direct result of the action of the move teams. An exercise of this magnitude will always have unforseen injuries. Unfortunately, it is I, who is suffering the dire consequences.

Document # 18-3, Administrative Remedy Request numbered 380760, pages 16-17.

twenty days of the incident. It is clear that Plaintiff filed the remedy request (numbered 380760) well more than twenty days following the February incident.

However, in his opposition brief, Plaintiff explains the unusually long period of time elapsed between the February incident and his first informal request to his counselor. Plaintiff claims that his counselor indicated that he could place both issues on the BP-8½ because they were closely related and because the lockdown had precluded Plaintiff from accessing the grievance process in a normal capacity. If Plaintiff's contention is true (as we must assume it is at this point the proceedings - see Angelastro, 764 F.2d at 944), Plaintiff may not have had the full administrative remedies process **available** to him. It is Defendants' burden to prove the failure to exhaust (Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910) and in light of Plaintiff's representations, Defendants' have not met this burden. Pleading these allegations is far removing from proving them, but Plaintiff will be allowed to opportunity to do so.

As it is not clear to this Court whether Plaintiff has exhausted his **available** administrative remedies on the excessive force claim under *Bivens*, summary judgment is inappropriate. Accordingly, summary judgment should be denied in this regard.[5]


> ### 2. *Respondeat Superior* **as it relates to Defendants Sherman, Robare and Reich (on the medical claims**)

Defendants argue that Sherman, Robare and Reich should be dismissed from this action because they lack personal involvement in Plaintiff's claims regarding his medical treatment. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional

---

[5] Interestingly, this is the only basis upon which Defendants move for dismissal on the *Bivens*/excessive force claim. So, that claim should remain pending in this action.

violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207. Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

Plaintiff identifies Defendant Sherman as the former Warden of the FCI-McKean, Defendant Robare as the Associate Warden of Operations of the FCI-McKean; and Defendant Reich as a former security captain at the FCI-McKean. Defendants argue that these three individuals should be dismissed from this action because they are not responsible for Plaintiff's medical care. Defendants' argument in this regard assumes that Plaintiff's excessive force claim has been dismissed (for failure to exhaust). As that is not the case, Plaintiff does make allegations of personal involvement by these three Defendants in the excessive force claim, and accordingly, these Defendants should not be dismissed from this action.

### 3.     Deliberate indifference - Medical claims

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in relation to medical treatment he received a) for his plantar fasciitis condition and b) for the February 2005 injuries to his wrist and hand.[6]   Defendants argue that Plaintiff has failed to state a claim of deliberate indifference stemming from his medical care.   At this point, a review of Plaintiff's medical history is helpful to the analysis of these claims.

### a)     Plaintiff's Relevant Medical History - Plantar fasciitis[7]

In support of the pending dispositive motion, Defendants have provided the Declaration of Defendant Dr. Dennis Olson, the clinical director at FCI- McKean, along with the supporting medical records as evidence.  These records reflect that Plaintiff initially reported bilateral foot pain on April 1, 2004,  and was diagnosed with plantar fasciitis and prescribed treatment of daily warm water soaks, arch support inserts, and Motrin.  Document # 18-2, page 13.  Plaintiff was told to return to Health Services as needed.

On May 26, 2004, Plaintiff was seen in the Chronic Care Clinic complaining that he had lost his arch supports and that his right ankle was aching.  Plaintiff was prescribed Motrin and

---

[6]  Plaintiff also claims that Defendant Olson intentionally prescribed medication for the purpose of exacerbating Plaintiff's Hepatitis C.  Document # 3, ¶ 28.  Defendants have not moved to dismiss this claim.

[7]  In his Declaration, Dr. Olson explains the condition and its treatments:

> Plantar fasciitis is an inflamation of the connective tissue on the sole of the foot. The most common area of pain is on the underside of the foot near the heel.  In the majority of cases, this is a non-serious condition that is generally treated with such measures as: appropriate rest, stretching exercises, warm water soaks, arch supports, and anti-inflammatory medication.  The condition may become chronic if the patient does not follow the treatment procedures.  Surgery is usually not recommended because it often does more harm than good.

Document # 18-5, Declaration of Dr. Dennis Olson, ¶ 6.

was given arch supports and an elastic ankle support wrap.  Id. at pages 14-15.

On August 24, 2004, Plaintiff received an x-ray of both feet.  The x-rays were analyzed by a civilian radiologist, Dr. Mark Welch.  The right foot had multiple old fractures of the second and third metatarsals.  Dr. Welch indicated that no acute fractures were seen, that there was no dislocation or bony destructive process noted, and that the left foot was normal.  Document # 18-3, page 1.

On August 30, 2004, Plaintiff was seen at the Chronic Care Clinic complaining about pain around the edge of his feet and stating that he stretched a tendon in his hand.  He was prescribed Motrin.  Document # 18-2, pages 16-17.

On November 22, 2004, Plaintiff was seen at Health Services complaining of pain in both feet.  Motrin was prescribed and Plaintiff was given a soaking basin.  It was noted that he should be referred to a doctor.  Id. at page 18.

On January 7, 2005, Plaintiff reported to Health Services complaining of his plantar fasciitis.  Plaintiff requested new boots which were ordered.  Plaintiff stated that Motrin was not helping with his pain and expressed concern about Motrin's effect on his Hepatitis C condition.  Plaintiff's Motrin prescription was changed to Naproxen.  Id. at page 19.  Dr. Olson's declaration indicates that a liver function test was subsequently performed and Plaintiff's liver function was normal.  Document # 18-5, ¶ 11.

On January 24, 2005, Plaintiff again reported to Health Services complaining of foot pain.  Plaintiff was not wearing his insoles. Plaintiff was given work and recreation restrictions.  It was noted that Plaintiff would be referred to the URC for determination as to whether he should receive an orthopedic consult.  Document # 18-2, at page 20.   A note dated April 28, 2005, indicates that the URC denied the request for an orthopedic consultation.   Id. at page 23; Document # 18-3, page 5.  The note indicates that consultation is  "Medically acceptable - not always necessary.  We will continue current treatment and continue to monitor your problem - resubmission of the request may be considered in the future if clinically indicated."  Id.

On April 1, 2005, Plaintiff was seen at Health Services and his prescription for Naproxen was refilled. Document # 18-2, page 22.

On May 16, 2005, Plaintiff reported to Health Services complaining of foot pain. Plaintiff was examined and advised to continue the current treatment plan. Id. at page 22.

On June 2, 2005, Plaintiff received a refill of his Naproxen prescription, as well as new insoles for his shoes. Id. at page 23.

On June 20, 2005, Plaintiff reported to the Chronic Care Clinic complaining of foot pain. Diagnostic studies were ordered. The treatment section is mostly illegible, but it appears to this Court, that the doctor ordered that Plaintiff's Naproxen be "held" and that Imodium be prescribed.[8] Id. at page 26.

On November 14, 2005, Plaintiff was seen at Health Services. Plaintiff was assessed with chronic plantar fasciitis. He was given stretching exercises, Naproxen and instructed to "consider gel insoles". Id. at pages 28-29.

On April 10, 2006, Plaintiff was seen at the Chronic Care Clinic, where his medications were reviewed. Id. at pages 30-31.

On September 11, 2006, Plaintiff was seen at the Chronic Care Clinic, where he was examined and his medications were reviewed. Id. at pages 32-33.[9]

---

[8] Dr. Olson does not address this treatment note in his Declaration. See Document # 18-5.

[9] In his Opposition brief, Plaintiff claims that much of the medical records and Dr. Olson's Declaration are misleading and/or false. Plaintiff argues that after a certain point in time (contemporaneous with the time at which Plaintiff began to grieve the issue of inadequate medical treatment for his plantar fasciitis condition), Dr. Olson began to pad the medical records in an attempt to conceal his own deliberate indifference. For instance, Plaintiff claims that Dr. Olson mischaracterizes the liver function tests as part of the course of treatment for plantar fasciitis when in truth the tests were routinely performed as part of the treatment for Hepatitis C. Further, Plaintiff claims that every Chronic Care Clinic entry is suspect because Plaintiff was referred to the clinic to monitor his Hepatitis C condition, not his plantar fasciitis, yet Dr. Olson's declaration "misrepresents the true nature of Plaintiff's Chronic Care Clinic treatment in order to conceal Defendants' deliberate indifference." Document # 24, page 22. Also, Plaintiff

**b)** **Plaintiff's Relevant Medical History - Wrist Injuries**

On April 1, 2005, Plaintiff reported to Health Services complaining of pain in digit 3 of his right hand and of pain in his left wrist stemming from the handcuffing during the February security incident. Id. at page 22. He was diagnosed with a sprain of each, and he was instructed to use moist heat, as well as an over-the-counter pain reliever. Id. X-rays of the right hand and wrist and left wrist were taken and analyzed by civilian radiologist, Dr. Mark Welch who reported no dislocation or fracture. Document # 18-3, page 2.

On August 25, 2005, Plaintiff was seen at Health Services complaining of an ache in his left wrist and weakness. Plaintiff denied numbness and tingling and there was no decrease in the range of motion. Plaintiff related that he had previously had an ulnar nerve injury and had received surgery for "trigger finger release." His left wrist was noted to have +2/4 strength, palmar hypothenar atrophy, significant dorsal hand atrophy, and he was assessed with a left ulnar nerve injury. Plaintiff was given Naproxen and referred for an orthopedic consult. Id. at page 27. It does not appear from the medical record that an orthopedic consultation ever took place.

On February 5, 2007, Plaintiff was seen at the Chronic Care Clinic complaining of a sore right wrist. Plaintiff denied any recent trauma. He was examined and his medications were reviewed. X-rays were taken and analyzed by both Dr. Olson and the civilian radiologist, Dr. Welch. The x-rays revealed no evidence of fracture, dislocation, or bony destructive process. Plaintiff was given an anti-inflammatory medication. Document # 18-2, pages 34-35; Document # 18-3, page 3.

---

explains that Defendant Olson falsely asserts that Plaintiff's feet were x-rayed on May 26, 2004 as treatment for his plantar fasciitis, when in reality those x-rays were performed as a result of an ankle sprain, yet the medical record for that date does not indicate any ankle sprain. Although Plaintiff's statements are troubling, they are not dispositive of the legal issues in this case. See infra pages 17-19 and footnote 10.

### c) Legal Analysis

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may also be found to exist where the denial or delay of treatment results in "unnecessary and wanton infliction of pain." Id.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Mere misdiagnosis or negligent treatment is not actionable under §1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Defendants have provided evidence in support of their argument for summary judgment.

The medical records, along with the sworn explanation provided by Defendants, reflect that prison officials were not deliberately indifferent toward Plaintiff's medical needs in regard to either his plantar fasciitis condition or his sprained wrists.

Plaintiff does not allege that he received no medical treatment - he only alleges that the conservative course of his treatment violates his Eighth Amendment rights. See Document # 24, page 16 ("The problem is that Defendant Olson opted for an easier and less efficacious treatment to Plaintiff's condition."). The medical records demonstrate that Plaintiff was seen numerous times by prison medical staff and that his continuing complaints were treated.[10] It is the course of treatment to which Plaintiff objects and such does not rise to the level of a constitutional violation under the Eighth Amendment. Therefore, Defendants were not deliberately indifferent to Plaintiff's medical needs[11] and summary judgment should be granted in favor of Defendants

---

[10] Plaintiff's attempts to create a genuine issue of material fact in regard to his foot treatment are nothing more than his own bald assertions and are not sufficient under the Federal Rules of Civil Procedure to defeat the pending motion for summary judgment. Plaintiff argues that in Dr. Olson's Declaration in support of the motion for summary judgment, Olson has taken liberties with the medical records to spin them to his best possible advantage. See supra footnote 8. Defendants have not addressed Plaintiff's arguments by way of a reply brief and such would have been helpful to this Court.

Under the summary judgment standard, a non-moving party must do more than make bald assertions in opposition to a pending motion in order to defeat it. Celotex, 477 U.S. at 322; Fed.R.Civ.P. 56. Although Plaintiff's assertions about Dr. Olson's lack of candor are disturbing to this Court, because they are not evidentiary in nature, they can not defeat a motion for summary judgment.

Even if Plaintiff's contentions had been presented in an evidentiary format, they would not defeat summary judgment here because they do not create a genuine issue of material fact sufficient to defeat the pending motion. For example, whether Plaintiff was seen at the Chronic Care Clinic due to his Hepatitis C or his plantar fasciitis is irrelevant to the legal analysis on deliberate indifference. The point is this: while at those Chronic Care Clinic appointments, the plantar fasciitis condition was medically treated.

[11] In his Opposition brief, Plaintiff contends that officials are FCI-McKean have engaged in a pattern of deliberate indifference towards the medical needs of inmates. Plaintiff provides declarations by inmates Ghazi Almashleh, Benjamin Wherry, and Otis Crowley detailing their

on both of these claims.

### 4.     Qualified immunity as to the Eighth Amendment medical claims

Finally, Defendants argue that the Eighth Amendment claims involving medical treatment should be dismissed against all of them because they are entitled to qualified immunity.  Defendants have not moved for dismissal or summary judgment on the excessive force claim in this regard.

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  An officer performing his discretionary functions is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Curley v. Klem, 278 F.3d 271, 277 (3d Cir. 2002).  "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730 (2002).

The analytical framework that district courts should employ in determining whether the defense of qualified immunity applies is clearly established:

> The Court explained that a qualified immunity analysis must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right?  Saucier, 121 S.Ct at 2156.  If the plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary.  If, however, the alleged facts show that there was a constitutional violation, then the next step is to ask whether the right was clearly established.  See id.  In other words, a court must consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Id. This inquiry, the Court noted, must be undertaken in light of the specific context of the case, not as a broad general proposition.  Id.

_____

own problems with medical care at FCI-McKean.  However, even such a pattern of deliberate indifference cannot defeat the motion for summary judgment in the face of Plaintiff's own medical records.  The issue before this Court in this case as alleged by Plaintiff in the complaint is whether these named Defendants have violated Plaintiff's Eighth Amendment rights as they relate to his medical treatment.

> If a court concludes that an officer's conduct did violate a clearly established constitutional right, then it must deny him the protection afforded by qualified immunity. See id. at 2156-57.

Curley, 278 F.3d at 277. See also Hope, 536 U.S. 730; Doe v. Delie, 257, F.3d 309 (3d Cir. 2001). Because this Court has already answered the first question in the negative, no further analysis need be undertaken.

**D.** **The Federal Tort Claims Act Claims**

Plaintiff raises a negligence claim under the FTCA claiming that the United States should be liable for negligence in failing to properly treat both of his medical conditions ( a) the plantar fasciitis and b) the wrist injuries) and failing to prevent the excessive use of force during the prison security incident.

**1)** **Proper Party**

Generally, under the principle of sovereign immunity, the United States cannot be sued for damages unless it consents to being sued. United States v. Mitchell, 445 U.S. 535, 538 (1980). The terms of the government's consent define the court's jurisdiction over the case.[12] Lehman v. Nakshian, 453 U.S. 156, 160 (1981). The Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment. See 28 U.S.C. § 2675(a). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text

_____

12 The consent contained in the FTCA is limited and Congress has expressly provided for exceptions to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a)-(n); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). These exceptions are to be construed in favor of the sovereign. United States v. Nordic Village, Inc., 503 U.S. 30, 32-36 (1992). The burden of establishing subject matter jurisdiction lies with the plaintiff. Robinson v. U.S., 849 F.Supp. 799, 801 (S.D.Ga.1994).

and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996). The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted).

All actions brought pursuant to the FTCA must be brought against the United States of America and not in the name of the allegedly negligent agency, entity or employee. 28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346(b). The only proper party in an FTCA action is the United States of America itself. To the extent that Plaintiff names Sherman, Robare, Smith, Montgomery, Olson and Reich [Document # 3, ¶¶ 29, 30, 36] as Defendants in the FTCA section of his complaint, no FTCA claim lies against them as individuals.

### 2.    Negligence

The Federal Tort Claims Act (FTCA) does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court. Hence, in a FTCA action, the district court applies the law of the state in which the act occurred. See 28 U.S.C. § 1346(b); Castillo v. U.S., 2002 WL 1752235, at *3 (7th Cir.2002).

In order to establish a cause of action in negligence under Pennsylvania law, plaintiffs bear the burden of demonstrating that there was (1) a duty or obligation recognized by law, (2) breach of that duty by the defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant. Corrigan v. Methodist Hosp., 2002 WL 31492261, at *7 (E.D.Pa. Nov 07, 2002); Carrozza v. Greenbaum, 866 A.2d 369, 379 (Pa. Super. 2004). All of the elements must be met in order for a plaintiff to recover in tort.

### a)  Medical Negligence

As an initial matter, "where there is no duty of care, there can be no negligence." Maxwell v. Keas, 639 A.2d 1215, 1217 (Pa.Super.1994). "Whether a defendant owes a duty of care to a plaintiff is a question of law" (Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir.1993)) and revolves around the relationship between the two parties. Congress has established a statutory duty of care to be applied when federal prisoners sue the United States for negligence. Title 18 U.S.C. § 4042 requires "the exercise of ordinary diligence" to keep inmates safe from harm. Id. Federal courts have construed this statute to include the duty to provide adequate medical care to all federal inmates.

Plaintiff cannot satisfy the four-prong test in order to establish a cause of action in negligence. In his Opposition Brief, it becomes clear that Plaintiff's allegations revolve around the denial of "surgical consultation" as to both his plantar fasciitis and his wrist and hand injuries. Document # 24, page 37. Although the government has a duty of care to the inmate, that duty of "ordinary diligence" does not mandate consultation with an orthopedic surgeon. Additionally, Plaintiff cannot show that the failure to provide an orthopedic surgeon was a factor in causing harm to Plaintiff or that Plaintiff suffered any damage as a result of that denial. The record before this Court reflects that Plaintiff has been treated by medical staff repeatedly with multiple pain medications as well as restrictions in his physical and work schedules. Plaintiff has not made any allegation regarding how prison medical staff deviated from the acceptable medical practices.[13]

---

[13]  Generally, under the law of this Commonwealth, a plaintiff must offer an expert witness who will testify to a reasonable degree of medical certainty that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. Rauch v. Mike-Meyer, 783 A.2d 815, 824 (Pa. Super. 2001). Because the actions of a physician encompass matters not within the ordinary knowledge and experience of layperson, Pennsylvania law requires that allegations of medical malpractice may not be proven without the testimony of "an expert witness who will testify, to a reasonable degree of medical certainty, that the act of a physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered."

Accordingly, Defendant's motion for summary judgment should be granted in this regard.

## b)    Negligence relating to the use of force

Plaintiff claims that Security Captain Reich and his correctional officers were negligent in their application and use of "flex-cuffs" during the February 2005 security incident.  On February 22, 2005, Warden Sherman authorized a complete lockdown of FCI-McKean.  At the time of the lockdown, approximately 100 inmates were unsecured at the cafeteria.  Prison staff entered the cafeteria, ordered all inmates to the ground, and flex-cuffed each one.  Each cuffed inmate was then escorted to his cell.

Defendants argue that Plaintiff has not made out a cause of action in negligence.  Again, in order to establish a cause of action in negligence under Pennsylvania law, plaintiffs bear the burden of demonstrating that there was (1) a duty or obligation recognized by law, (2) breach of that duty by the defendants, (3) a causal connection between the defendants' breach of that duty and the resulting injury, and (4) actual loss or damage suffered by the complainant.  Corrigan, 2002 WL 31492261, at *7.

At this point in the proceedings, Title 18 U.S.C. § 4042's requirement for "the exercise of ordinary diligence" to keep inmates safe from harm will be liberally applied to satisfy the general requirement of a duty owed to Plaintiff by Defendants.  However, Plaintiff cannot satisfy the breach prong of the negligence analysis.  As Captain Reich, who was responsible for the management of the lockdown, explains in his declaration:

> The Warden ... had received credible intelligence that inmates throughout the institution were planning various activities that presented a significant threat to the safety of staff ... [O]ut of operational necessity and in the interests of prison security, Bureau of Prisons correctional officers, with full authorization from the

Flannigan v. Labe, 666 A.2d 333, 335 (Pa. Super. 1995). To be admissible, the expert's opinion must be rendered within a reasonable degree of medical certainty.  Montgomery v. South Philadelphia Medical Group, 656 A.2d 1385, 1390 (Pa. Super. 1995).  Neither party has provided this Court with an expert opinion.

> Warden, entered the food services area to secure the inmates and escort them back to their cells. In order to accomplish this potentially troublesome transport, correctional officers applied flex-cuffs in order to ensure staff safety during the critical movement. Flex-cuffs are an appropriate and approved restraining device within the Bureau of Prisons system. ... Flex-cuffs are critical to the security mission of the Bureau of Prisons. It is common practice among correctional officers to adjust flex-cuffs for those inmates who complain about tightness.

Document # 18-4. Captain Reich further explains that he was not made aware of any complaints by Plaintiff or any of the correctional officers handling him. Id.

There has been no breach of the duty and therefore, the motion for summary judgment should be granted.

## III.    CONCLUSION_____

For the foregoing reasons, it is respectfully recommended that the motion to dismiss or alternatively for summary judgment filed by Defendants [Document # 17] be granted in part and denied in part. More specifically, the motion should be:

    a)    denied as to Defendants' contention that Plaintiff has failed to exhaust his administrative remedies under the PLRA on his excessive force claim;

    b)    denied as to Defendants' argument that Plaintiff has not sufficiently alleged the personal involvement of Defendants Sherman, Robare and Reich;

    c)    granted as to the Eighth Amendment deliberate indifference claim involving the plantar fasciitis condition;

    d)    granted as to the Eighth Amendment deliberate indifference claim involving the wrist and hand injuries sustained during the February 2005 prison security incident;

    e)    granted as to the FTCA claims involving medical negligence as to both the plantar fasciitis condition and the wrist and hand injuries; and

    f)    granted as to the negligence claim involving the application of flex-cuffs.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days

from the date of service to file written objections to this Report and Recommendation.  No extensions of time will be granted.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).




S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge


Dated: February 28, 2008